# Williams *v.* Beam.

*Ejectment—Adverse possession of land—Evidence—Question for jury.*

In an action of ejectment where the defendant claims title by adverse possession for over thirty years, the case is for the jury where the evidence for the defendant, although contradicted in many particulars, tends to show that defendant went into possession under a parol gift from his mother; that he cleared and cultivated a part of the land; that he erected improvements thereon, planted an orchard, generally used the land as an owner and paid taxes thereon for twenty-one years prior to the bringing of the suit.

Where a person takes possession of land under a claim of right and not as an intruder, his possession of a part of the premises by his tenant when he has temporarily removed from the rest of the land, gives him constructive possession of the entire tract, and any other person farming or pasturing the land will be presumed to be acting in subserviency to his title.

Argued April 17, 1900.    Appeal, No. 403, Jan. T., 1899, by plaintiffs, from judgment of C. P. Clearfield Co., Sept. T., 1898, No. 117, on judgment for defendant, in case of Adeline Williams, Lydia Beightol, Esther Ann Markle and McClain Beam, by his committee, Henry Hoover, v. Nathan Beam.    Before GREEN, C. J., McCOLLUM, DEAN, BROWN and MESTREZAT, JJ.    Affirmed.

Ejectment for an undivided four fifths of a tract of land in Cooper township.    Before GORDON, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[Another important question for your consideration is, when the possession commenced, because there is some evidence here of the use of a portion of this land by Daniel Beam, the father, in 1867 and 1868.    It is in evidence that he had corn in one of the fields, at least in the year of 1867, which was planted before the alleged parol gift, and that in the next spring, the spring of 1868, he put out the cornstalks in oats and harvested that fall.    The evidence is silent as to whether or not the father accounted to his son for any share of that crop.    This is not evidence of any entry.    What the father did there

would not be such an entry upon the property as would toll or stop the running of the statute, but it bears upon the question of the defendant's continuity of possession. Were the father's acts there such as to prevent his possession being adverse until after all that work was done? Whether it did or did not, you must judge from all the facts and circumstances in the case. Is there any evidence here indicating that at the time the father thus used that part of the land, that the defendant was not claiming the farm as his own, outside of the timber, which is conceded to belong to the father. Did the defendant, during the years 1867 and 1868, even while the father was there using the land to a certain extent during all that time, claim to own the land by virtue of the parol gift to him. Was the father's use of it by his permission, or was it mutually agreeable. If it was by permission of the defendant, and if during his use of it, in the manner indicated, the defendant still claimed to be the owner, it would not destroy the continuity of his possession.] [1]

[And next, it is is important for the jury to consider whether his possession and claim of ownership was continuous from the time it was taken. First, did it commence at or before June 8, 1868, which was thirty years before the bringing of the suit? Second, having commenced then, if it did, did it continue down to the time the suit was brought? It is claimed on behalf of the plaintiffs that it did not; that in the year 1871 the defendant left that possession and went to Missouri, remaining there two years and some months, and that while he was gone, a portion of this land was in the use and occupancy of the father. Now, it is proper for you to consider when the defendant left whether it was with an intention upon his part to abandon the farm. Did he surrender his possession in whole or in part? Did Daniel Beam enter under a claim of right? Of course, this was a long time ago and there is no evidence here as to the terms and conditions upon which Daniel Beam entered, his purpose in entering, whether it was under any claim of ownership in him or his wife, and you must judge of all this from all the facts and circumstances. Among other circumstances you must judge of what was done by Nathan Beam, the defendant, when he returned from the West, and what was done by the father and mother upon his return, whether on his return,

he took possession, and whether the father and mother entered any protest of any kind against it.] [2]

[And, as we said before, it is proper for you to take into consideration in this case the testimony as to the use of the old fields, which it is claimed and it seems from the evidence was not included in the lease from the defendant to Taylor. But just under what terms and by what arrangement Daniel used and cultivated these fields, if he did, it does not appear by the testimony. Did the defendant leave under circumstances indicating an intention on his part to still retain possession? It is not necessary that he be there on the premises all the time. It was competent for him to leave, either temporarily or for good, provided he put somebody there to represent him, to hold the possession adverse, continued and hostile for him. Did he do this? It is competent for a man thus claiming title, and while he is claiming title by adverse possession, to leave the possession temporarily as in the case read in your hearing where a party left on account of a flood; or, a man might leave his home in order to go to the woods, and take his family and all his stock with him temporarily, to carry on a lumbering operation, intending when the job was through to return again to his home. Such an act on his part would not break the continuity of his possession, it would not furnish any evidence of an abandonment of the property by him.] [3]

[It is claimed on the part of the defendant here that when he left he did not intend to abandon the possession, but that he put it in charge of his tenant, and what the tenant did in his absence furnished notice to the former owners. The evidence shows that he returned some time in the year of 1873, but did not at once go into possession of this property because it was occupied by the tenant and he continued to occupy it until the termination of his lease, and then the defendant retook possession.] [4]

[It is proper for the jury to consider the act of the tenant and of the father pertaining to the use of the property during the time of the defendant's absence; whether that use was permissive or whether it was not. If it was permissive, if Daniel used those fields by the permission of the defendant, it would not break the continuity. Well now, gentlemen of the jury, there is no direct evidence, or evidence in fact of any kind, as

we recollect it, in the case bearing upon that question. As we said, pertaining to the other matter, it is a long time ago. The defendant's mouth is sealed here on account of the death of his mother; he cannot testify to anything that occurred during her lifetime, except what occurred with persons who are now living and who have gone upon the stand and testified against him, and you must pass upon it by considering all the facts and circumstances in the case.] [5]

Verdict and judgment for defendant. . Plaintiffs appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them.

*Joseph B. McEnally,* with him *Daniel W. McCurdy,* for appellants.—To give title under the statute of limitations, the possession of the disseizor must be actual, visible, notorious, distinct, hostile and continued for the period of twenty-one years : Hawk v. Senseman, 6 S. & R. 23 ; DeHaven v. Landell, 31 Pa. 120 ; Hole v. Rittenhouse, 25 Pa. 493. In a case like the present, owing to the plaintiffs' disabilities, thirty years' continuous, adverse possession is required : Hunt v. Wall, 75 Pa. 413.

The possession must be, not only hostile, but continued and exclusive, and for the purposes of residence or cultivation : Wheeler v. Winn, 53 Pa. 131 ; Long v. Mast, 11 Pa. 189.

The sufficiency of the title shown is a matter of law for the court. Its existence is for the jury where there is sufficient evidence to justify the submission of that question to the jury : DeHaven v. Landell, 31 Pa. 120 ; Hood v. Hood, 2 Grant, 239 ; Gilchrist v. Rogers, 6 W. & S. 488 ; Union Canal Co. v. Young, 1 Wharton, 427.

The standard is higher where the son claims title by the statute of limitations against his parent, than where such claim is made by a stranger: Poorman v. Kilgore, 26 Pa. 365 ; Bannon v. Brandon, 34 Pa. 263.

Where the question is one of title under the statute of limitations, the necessary conclusion from the decisions is, that if the evidence as a whole, upon any reasonable view that may be taken of it, does not, in the judgment of the court, furnish that clear, definite and affirmative proof of every essential ele-

ment of title which the law requires, then the court should not submit that case to the jury, but should instruct the jury that the evidence is insufficient.

Where the charge of the court as a whole tends to mislead the 'jury, it is error: Penna. R. Co. v. Berry, 68 Pa. 272; Washington Mut. Fire Ins. Co. v. Rosenberger, 3 W. N. C. 16; Bisbing v. The Third National Bank, 93 Pa. 79; Tietz v. Phila. Traction Co., 169 Pa. 516; Sproat v. The Directors of the Poor, 145 Pa. 598; Potts v. Jones, 140 Pa. 48.

*David L. Krebs* and *Smith V. Wilson*, for appellee.—The true rule governing this case on the question of the gift and adverse possession under it, is settled by the case of Campbell v. Braden, 96 Pa. 388. See also Moreland v. Moreland, 121 Pa. 576, Ewing v. Ewing, 96 Pa. 381, and Graham v. Craig, 81* Pa. 465.

The case was a proper one to submit to a jury: Handley v. Barrett, 176 Pa. 246; Griffin v. Mulley, 167 Pa. 341; Thompson v. Kauffelt, 110 Pa. 209; McMasters v. Bell, 2 P. & W. 180; Hart v. Carroll, 85 Pa. 508.

The plaintiffs are barred by the act of 1856: Hunt v. Wall, 75 Pa. 413; Pratt v. Eby, 67 Pa. 402; Hogg v. Ashman, 83 Pa. 80; Warn v. Brown, 102 Pa. 353; Updegrove v. Blum, 117 Pa. 259; Boyd v. Weber, 193 Pa. 651.

OPINION BY MR. JUSTICE MESTREZAT, May 29, 1900:

This was an action of ejectment for the undivided four fifths of a tract of land in Cooper township, Clearfield county, containing 101 acres and 57 perches, brought by four of the five children of Susanna Beam, deceased, against Nathan Beam, the remaining son. The plaintiffs claimed as heirs of decedent, who became the owner of the premises in dispute in 1856, and died intestate in 1885. The defendant on the trial set up title in himself by adverse possession for more than thirty years prior to the time the suit was brought.

The case was tried with great care by the learned trial judge, and notwithstanding the numerous assignments of error, we are not convinced that the plaintiffs have any substantial grounds of complaint.

The errors assigned are to the charge of the court and its an-

swers to the points for charge. Some of the points presented by the plaintiffs practically asked the court to withdraw the case from the jury and to direct a verdict for the plaintiffs.

The refusal of these points constitutes the principal error alleged and the only one requiring any special notice. While the testimony might have been stronger and more satisfactory as to the claim under which the defendant entered upon the premises and as to his continuity of possession thereafter, yet it, with the evidence as to the adverse possession, was sufficient to go to the jury and, if believed by them, to warrant a verdict for the defendant.

To show that the defendant went into possession of the premises under a parol gift of his mother, witnesses were called who testified to declarations of Mrs. Beam that she had purchased the place for her son and had given it to him. At least one of defendant's witnesses who testified that he heard Mrs. Beam say she had given the farm to her son, fixed the date of his conversation with her in the fall of 1867. This was supplemented by testimony that in 1880, Mrs. Beam desired to execute and deliver a deed for a nominal consideration to her son for the premises.

The character of defendant's possession of the land was shown by many witnesses who testified that he erected a log house on it and removed into the house in the fall of 1867; that he resided there until 1871 when his tenant took possession of a part of the land and farmed it and he removed West, where he remained till the latter part of 1873 when he returned and, at the expiration of the tenant's lease in the spring of 1874, removed again to the premises where he has since resided. Testimony was also adduced to show that he had cleared and cultivated part of the land and that since the erection of the log house on the premises, he had built two other houses, a barn, a granary and shed on the farm, had erected fences, planted an orchard and used the woodland as farmers usually use such lands. There was also evidence of the assessment of taxes on the property in defendant's name from 1876 to 1898 and of the payment of the taxes by him from 1877 until 1898. Declarations of ownership as a gift from his mother by him since he took possession of the land in 1867, also declarations by Mrs. Beam of his ownership as well as the reputation of his ownership of the land in the neighborhood were testified to by witnesses.

The appellee maintains that the above and other testimony in the case show that he entered upon the whole tract in the fall of 1867 in pursuance of a parol gift of his mother; that since that date he has had the continuous and exclusive control and possession of the entire farm, and that his possession for more than thirty years prior to the time suit was brought was actual, continuous, adverse, visible and hostile.

To meet the defense set up by Nathan Beam, the plaintiffs introduced testimony on the trial of the cause to show that the defendant removed to the land by permission of his mother as a temporary place of residence and not under a parol gift by her; that he was not to cut timber except where the land was being cleared; that what the defendant did on the property, prior to his going to Missouri, was only what his mother permitted him to do; that the improvements he made were of an ordinary character, such as were necessary for his use of the premises and such as he might be expected to make if residing there by consent of his mother; and that, during the time the defendant was in the West, his father and mother pastured a part of the land. The plaintiffs also offered evidence of the defendant's declarations and admissions that his possession was not adverse, but permissive and that he abandoned the premises when he went West in 1871. The land was assessed to Mrs. Beam and she paid the taxes thereon until 1877.

It is, therefore, claimed on the part of the appellants that the testimony was insufficient to show that the defendant had the exclusive, adverse and continuous possession of the land for thirty years prior to the commencement of this suit, and that the court should have so instructed the jury. It is very strenuously urged that, from 1871 to 1874, the defendant did not have possession of the premises, except the eight or ten acres occupied by J. K. Taylor, the defendant's tenant. Mr. Taylor testified, inter alia, that in the spring of 1871 he leased of the defendant " a wheat field and his clearing " on the farm for three years, and that during that period he farmed one of the fields for two years under Daniel Beam, Mrs. Beam's husband. This, taken in connection with the fact that Mr. and Mrs. Daniel Beam pastured and farmed a part of the premises in 1871 and 1872 shows, it is alleged, an abandonment of the premises during those years by the defendant.

We have directed attention to the main features of the testimony and while it is very conflicting and would justify a verdict for either side of the controversy, it is apparent that the court could not withdraw it from the jury and direct a verdict for the plaintiffs. The defense was the statute of limitations. It is not claimed that the entry upon the premises in 1867 by the defendant was tortious, but it is conceded by both parties that whatever possession of the property the defendant had was a gift by his mother. The plaintiffs claimed that he was permitted to occupy the premises temporarily, while the defendant contended that his permission to occupy the land was by an absolute gift of it which was the inception of his title. There was evidence to submit to the jury that defendant entered upon the land in 1867 and also evidence of declarations of Mrs. Beam in that, and subsequent years, that she had given the land to her son. If this testimony was believed, the jury would have been warranted in concluding that his entry in 1867 was in pursuance of a parol gift in fee of the premises in dispute. This conclusion would be strengthened by the fact that the defendant's right to the possession of the premises was never challenged by Mrs. Beam or her husband, and that she evinced a desire to deliver to her son a deed conveying to him the premises. The character of the defendant's possession might well have been found to be adverse and exclusive under the evidence submitted.

In determining the question of the continuity of possession and the alleged abandonment of the land from 1871 to 1874, the character of the defendant's entrance upon the premises is material. If the jury found that Nathan Beam entered under a parol gift of the land, he then took possession of it under a claim of right and not as an intruder. We think the jury was justified under the evidence in finding that Taylor was the defendant's lessee of the part of the land held by him during Beam's absence in Missouri. If this be true, then the defendant's possession of the part of the premises by his tenant would give him constructive possession of the entire tract and any other person farming or pasturing the land would be presumed to be acting in subserviency to his title. The fact that the father and mother of the defendant made no objection to his use and occupancy of the premises after his return from the West,

would be evidence of a recognition by them of title in the defendant and that their use of the premises in his absence was with his permission. They never sought to evict him by legal proceedings or otherwise, although his mother lived eleven years, and his father twenty-four years, after he returned to the premises in 1874. A jury, with all the facts before it, has said that they intended their son to have a fee simple title to the premises, and we are not convinced that it erred.

The assignments of error are overruled, and the judgment is affirmed.